**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ )<br>BRIAN GAUTHIER and )<br>EILEEN GAUTHIER, )<br> )<br> Plaintiffs, )<br> )<br> v. )<br> )<br>UNITED STATES OF AMERICA, )<br>INTERCONTINENTAL HOTELS )<br>CORP., WORLD WIDE TRAVEL )<br>EXCHANGE, in its own right and d/b/a )<br>TRAVELSCAPE, in its own right and )<br>d/b/a EXPEDIA in its own right, PCL )<br>CONSTRUCTION SERVICES, INC., )<br>DOES 1-10, )<br> )<br> Defendants. )<br>_____ ) | Civil Action No.<br>4:10-40116-FDS |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTIONS TO DISMISS AND RELATED MOTIONS**

      This action arises from the alleged sexual assault of a woman in a hotel while she was vacationing with her husband in the Bahamas. The assailants are alleged to have been construction workers housed in the same hotel by their employer while working on a project nearby. Plaintiffs, appearing *pro se*, have filed suit against their travel agency, the franchisor of the hotel, and a construction contractor alleged to have been the workers' employer at the time. Plaintiffs are also suing the United States under the Federal Tort Claims Act ("FTCA"), alleging that the United States Embassy in the Bahamas failed to provide adequate consular assistance after the assault. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

      Defendants have filed motions to dismiss under Fed. R. Civ. P. 12(b)(1), (2), and (6). Defendant PCL Construction Services, Inc. has moved to strike portions of plaintiffs' pleadings as

in violation of Local Rule 7.1(b)(1)-(3), Fed. R. Civ. P. 12(f), and Fed. R. Evid. 802.  PCL has

also moved for sanctions and attorney's fees against plaintiffs under Fed. R. Civ. P. 11(c)(2).[1]

 For the reasons set forth below, the motions to dismiss will be granted as to all defendants,

PCL's motion to strike will be granted in part and denied in part, and PCL's motion for sanctions

and attorney's fees will be denied.

## I. <u>Background</u>

 For purposes of a motion to dismiss, the Court takes the factual allegations in the

complaint as true.[2]

 In January 2005, Eileen Gauthier, a resident of Worcester County, Massachusetts,

purchased a vacation package online for herself and her husband, Brian Gauthier.  (Amend.

Compl. ¶¶ 3, 9).  Eileen purchased the package at www.bahamas.com, a website operated by The

Bahamas Ministry of Tourism.  (*Id.* ¶ 40).  Defendant World Wide Travel Exchange ("WWTE"),

operating under the name Expedia, was the vendor.  (*Id.* ¶ 6, 40).

 The vacation package consisted of an all-inclusive stay from February 5 to February 13 at

the Holiday Inn Sunspree Resort on Paradise Island.  (*Id.* ¶ 9, Ex. 1).  Defendant Intercontinental

Hotels Corp. owns the "Holiday Inn" brand and was the franchisor of the resort.  (*Id.* ¶ 5).

 On the second night of the their stay, Mrs. Gauthier was sexually assaulted by several

men, who threatened her with an unspecified deadly weapon.  (*Id*. ¶¶ 12, 17).  The assailants were

---

[1] Plaintiffs have submitted a motion for leave to file a surreply brief.  That motion will be denied as moot.

[2] On November 16, 2010, forty-two days after filing their amended complaint, plaintiffs submitted an affidavit of Eileen Gauthier that includes information concerning previous rounds of litigation arising from the events alleged in the complaint.  Because defendants did not object to or contradict the affidavit's procedural history, and because that background is necessary to resolve the statute of limitations issues raised by both parties, the Court will consider the document as if it were appended to the complaint as an exhibit.

construction workers employed by PCL Construction Services, Inc.  (*Id*. ¶ 57).  PCL had

arranged for the employees to board at the Holiday Inn Sunspree while they worked at a

construction site on the island.  (*Id*. ¶¶ 10, 12).  Mrs. Gauthier later escaped to her room.  (*Id*. ¶

12).  During the remainder of the Gauthiers' stay in the Bahamas, she was subject to intimidation

by some of the many construction workers present on the island and at the hotel.  (*Id*. ¶¶ 18-20).

On February 14, after her return to Massachusetts, Mrs. Gauthier visited a physician in

Worcester regarding the sexual assault.  The physician reported it to local police.  (*Id*. ¶ 21).  The

next day, Mrs. Gauthier contacted the Bahamian police and the United States Embassy in Nassau.

(*Id*. ¶¶ 22-23).  Through 2006, the Gauthiers corresponded with the embassy regarding the

incident and cooperated with police investigations, but no criminal prosecution resulted.  (*Id*. ¶¶

23-30).

Since the assault, the Gauthiers have repeatedly sought legal redress for their injuries in

various forums.  On February 4, 2008, they filed a lawsuit in a Florida state court in Miami.  In

that case, the Gauthiers sued a different set of defendants than those sued in the present action,

but eventually realized that those entities were not the appropriate defendants.  (Gauthier

11/16/2010 Aff. ¶ 12).  The action was ultimately dismissed for lack of prosecution on July 27,

2010.  (*Id*. ¶ 14; WWTE Mot. Ex. C).

In July 2008, the Gauthiers filed an administrative action with the United States

Department of State.  (Amend. Compl. ¶ 38).  The exact nature of the action is unclear from the

complaint, but the Court understands it to have been an administrative tort action for damages

arising from operations of the State Department abroad, pursuant to 22 U.S.C. § 2669-1.  The

claim was denied in December 2009.  (*Id*. ¶ 39).

On February 5, 2009, the Gauthiers filed a second suit in Florida state court, this time in Orange County.  (Gauthier 11/16/2010 Aff. ¶ 15).  The defendants in that action were PCL, Intercontinental, WWTE, and another corporation not joined in the present action.  (*Id.*).  As against PCL, Intercontinental, and WWTE, the action was dismissed without prejudice on grounds of *forum non conveniens* on December 7, 2009.  (WWTE Mot. to Dismiss, Ex. J).

On June 28, 2010, the Gauthiers commenced the present action.  On September 30, 2010, they amended their complaint to include counts against WWTE and against the United States.  The private defendants (PCL, WWTE, and Intercontinental) have moved to dismiss all counts of the amended complaint for failure to state a claim under Rule 12(b)(6).  PCL has also moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  The United States has moved to dismiss the FTCA claim for lack of subject-matter jurisdiction under Rule 12(b)(1).

## II.    Motions to Dismiss

### A.    Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

4

(2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded

facts do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer*

*Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Where, as here, a motion to dismiss is asserted against a *pro se* litigant, any document

filed by the *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106

(1976)) (internal quotation marks omitted).  *See also* Fed. R. Civ. P. 8(e) ("[p]leadings must be

construed so as to do justice.").

**B.**     **Statute of Limitations (Counts One, Two, Four, Five, Seven)**

The private defendants have moved to dismiss on the grounds that the applicable

limitations period has expired as to each of the state law tort claims asserted against them.

Plaintiffs claim the benefit of several tolling provisions, a "savings statute," and the doctrine of

equitable tolling.  For the reasons set forth below, the motions to dismiss the claims as time-

barred will be granted.[3]

**1.**     **Choice of Law**

The events alleged in the complaint largely took place in the Bahamas, and the parties

dispute whether the Massachusetts or the Bahamian statutes of limitations should apply.  For the

following reasons, the Court will apply the Massachusetts statutes.

---

[3] As explained below, all claims against PCL will also be dismissed for lack of personal jurisdiction.
Defendants WWTE and Intercontinental effectively consented to this Court's jurisdiction by failing to raise the
personal jurisdiction issue in their motions to dismiss. Fed. R. Civ. P. 12(h)(1); *Marcial Ucin, S.A. v. SS Galicia*,
723 F.2d 994, 996-97 (1st Cir. 1983).

Federal courts adjudicating state law claims generally apply the statute of limitations applicable to the action under the forum state's law.  *See Molinar v. Western Elec. Co.*, 525 F.2d 521, 531 (1st Cir. 1975) (*citing Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945)).  This Court will apply the same choice of law analysis as a Massachusetts state court.  *Id.*

In *New England Tel. & Tel. Co. v. Gourdeau Constr. Co.*, the Massachusetts Supreme Judicial Court adopted the "functional approach" to determining the applicable statute of limitations for actions arising in or connected to other jurisdictions.  419 Mass. 658, 664 (1995).  This approach, which is set forth in sections 6 and 142 of the Restatement (Second) of Conflict of Laws, aims to apply the statute of limitations of "the state which, with respect to the issue of limitations, is the state of most significant relationship to the occurrence and to the parties."  *Nierman v. Hyatt Corp.*, 441 Mass. 693, 697 (2004) (quoting Restatement (Second) of Conflicts of Laws § 142, cmt. e).

The functional analysis is simple when a claim is time-barred by the law of the forum state (Massachusetts).  In such situations, section 142(1) provides that "[a]n action will not be maintained if it is barred by the statute of limitations of the forum . . . ."  Restatement (Second) of Conflicts of Laws § 142(1).  *See Shamrock Realty Co. v. O'Brien*, 72 Mass. App. Ct. 251, 256 (2008) (holding that "the forum State will apply its own statute of limitations barring the claim unless the exceptional circumstances of the case make such a result unreasonable").

As discussed below, plaintiffs filed this lawsuit after the relevant limitations periods expired under Massachusetts law.  The claims are therefore time-barred and will be dismissed.

### 2.     **Statute of Limitations for Negligence and Intentional Tort Claims (Counts One, Two)**

Counts One and Two allege assumption of duty and intentional and negligent infliction of emotional distress.  Such actions are subject to a general three-year limitations period, which runs from the accrual of the cause of action.  Mass. Gen. Laws ch. 260, § 2A.

The viability of plaintiffs' claims therefore depends on when the claims accrued.  The general rule is that tort causes of action accrue when the plaintiff is injured.  *Koe v. Mercer*, 450 Mass. 97, 101 (2007).  However, under the "discovery rule," accrual of a cause of action is delayed if the plaintiff does not know and could not reasonably know that he or she "may have been harmed by the conduct of another."  *Id.*  (citing *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 205 (1990)).  The discovery rule is narrow, generally applying only where the harm itself is "inherently unknowable."  *Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 65 (1st Cir. 1997); *see also Catrone v. Thoroughbred Racing Ass'n of N. Am, Inc.*, 929 F.2d 881, 886 (1st Cir. 1991).  The claim accrues as soon as events put the potential plaintiff on notice "that someone may have caused [the] injury."  *Bowen*, 408 Mass. at 207; *see also Krasnow v. Allen*, 29 Mass. App. Ct. 562, 569-570 (1990) (holding that the discovery rule did not delay accrual where the plaintiff merely lacked knowledge of the identity of a particular defendant).

Here, plaintiffs' causes of action unquestionably accrued on the night of February 6, 2005, the night of the sexual assault.  The harm was overt, and Mrs. Gauthier was aware of her injury at the time.  (Amend. Compl. ¶¶ 12, 17).  Plaintiff's inability to discover the identity of certain defendants until later does not mandate a different result.  Because the harm itself was immediately knowable, the discovery rule is inapplicable.

Absent tolling of the statute, plaintiffs' claims therefore became time-barred three years later, on February 6, 2008.  Plaintiffs, however, argue that various tolling principles save their claims.  As explained below, none of those principles apply.

### a.   Disability Toll

If a person is "incapacitated by reason of mental illness when a right to bring an action first accrues," the running of the limitation period is tolled until the disability is removed.  Mass. Gen. Laws ch. 260, § 7.  Plaintiffs argue that the shock and psychological trauma they experienced as a result of the events in 2005, and other personal hardships, rendered them unable to file suit in Massachusetts within the limitations period.  However, the statutory tolling provision does not apply to this type of mental infirmity.

The statute protects those who, due to mental infirmities at the time a claim would normally accrue, are unable to recognize that the relevant events might give rise to a legal cause of action.  In *McGuinness v. Cotter*, the Supreme Judicial Court ruled that an amendment to ch. 260, § 7, which replaced the word "insane" with "incapacitated by reason of mental illness," ratified earlier cases holding that the disability toll concerned the type of condition that precludes a plaintiff from "understanding the nature or effects of his acts and thus prevents him from comprehending his legal rights."  412 Mass. 617, 624 n.9 (1992) (quoting *Pederson v. Time, Inc.*, 404 Mass. 14, 16 (1989)).  Tolling the statute of limitations on grounds of a mental disability therefore requires a showing that the plaintiff lacked "the capacity to pursue legal action."  *Street v. Vose*,  936 F.2d 38, 40 (1st Cir. 1991).  Trauma and other emotional disturbances do not toll the limitations period unless they interfere with this capacity.

The facts alleged in the complaint do not indicate the type of incapacitation necessary to

trigger tolling under the statute.  The Gauthiers' account of their behavior immediately following

the incident in the Bahamas and in subsequent years demonstrate their comprehension of their

legal rights.  A little more than a week after the incident, plaintiffs contacted Bahamian police and

the United States Embassy in the Bahamas to initiate an investigation.  (Amend. Compl. ¶¶ 22.

23).  On February 4, 2008, just less than three years after the incident, the Gauthiers filed the first

of their lawsuits over the incidents.  (Gauthier 11/16/2010 Aff. ¶ 12.).  These actions are

inconsistent with being unable to comprehend legal rights or pursue legal action, even if plaintiffs'

emotional and psychological struggles during the same period may have made asserting those

rights more difficult.  Thus, ch. 260, § 7 did not prevent the running of the limitations period.

### b.        Fraudulent Concealment Tolling

Mass. Gen. Laws ch. 260, § 12 tolls the running of any limitations period if a party

"fraudulently conceals the cause of such action from the knowledge of the person entitled to bring

it."  Plaintiffs argue that the statute applies because defendants are alleged to have provided

misleading information about, among other things, which corporation was the vendor that sold the

vacation package to plaintiffs.  (Amend. Compl. ¶ 75).

Like the discovery rule, the fraudulent concealment toll concerns plaintiffs' ability to know

of the "cause of action" itself, not the particular identity of the tortfeasor.  Thus, for example,

"denials of responsibility for conditions of which plaintiffs were fully aware" do not trigger the

tolling provision.  *White v. Peabody Const. Co., Inc.*,  386 Mass. 121, 134 (1982).  Here,

plaintiffs do not allege that defendants deceived them as to whether they had a legal right to sue

someone.  At most, they allege that defendants denied responsibility and may have misled

plaintiffs with regard to the corporation's relationship to the workers alleged to have commit the

9

assault.  Such a misrepresentation would not conceal from plaintiffs the existence of their cause of

action.  Mass. Gen. Laws ch. 260, § 12 thus does not apply.

### c.    <u>Savings Statute</u>

Mass. Gen. Laws ch. 260, § 32 permits the refiling, within one year, of any civil action

that is "duly commenced" but nonetheless dismissed either for "insufficient process" or "for any

matter of form."  Plaintiffs invoke this provision in an attempt to revive their actions that were

dismissed from Florida state courts.  Neither of the prior dismissed actions trigger the savings

statute.

The first action, filed on February 4, 2008, was dismissed on July 27, 2010, for failure to

prosecute.  Dismissal for failure to prosecute is not a dismissal for a "matter of form" under the

statute.  *Jones v. Binette*, 19 Fed. Appx. 6, 6 (1st Cir. 2001) (citing *Cumming v. Jacobs*, 130

Mass. 419, 421 (1881)).  Thus, because plaintiffs' first action was dismissed neither for

"insufficient process" nor for a "matter of form," the savings statute could not extend the period

during which they could file their claim.

Plaintiffs filed their second lawsuit in Florida on February 5, 2009, more than three years

after their cause of action would have accrued under Massachusetts law.  When a party claims the

benefit of ch 260, § 32 to revive an action dismissed in another state, the timeliness of the original

action is evaluated under the Massachusetts statute of limitations, not the law of the original

jurisdiction.  *Maltz v. Smith Barney, Inc.*, 427 Mass. 560, 561-62 (1998).  The purpose of the rule

is to prevent plaintiffs from doing an end-run around local statutes of limitations by merely filing

suit in a jurisdiction with a longer limitations period.  *Id.*  Here, because plaintiffs' original action

would have been time-barred under Mass. Gen. Laws ch. 260, § 2A, the savings clause will not

allow plaintiffs to refile now, even if the 2009 action was timely under Florida law.

### d.      Equitable Tolling

Plaintiffs next argue that exceptional circumstances in this case warrant the equitable

tolling of the statute of limitations.  The doctrine of equitable tolling allows a plaintiff to assert an

otherwise time-barred claim in a limited set of circumstances.  *Irwin v. Department of Veterans*

*Affairs*, 498 U.S. 89, 96 (1990).  Massachusetts recognizes the doctrine, but applies it "only

sparingly," generally limiting its application to specified circumstances:  instances involving

excusable ignorance of a filing deadline, dismissal of a prior timely action for defective pleadings,

or deceptive misconduct by a defendant that causes the plaintiff's failure to file.  *Shafnacker v.*

*Raymond James & Assocs., Inc.*, 425 Mass. 724, 728 (1997) (citing *Irwin*, 498 U.S. at 96;

*Andrews v. Arkwright Mut. Ins. Co.*, 423 Mass. 1021, 1022 (1996)); *Coyne v. Nascimento*, 2010

WL 4676220, at *2 (Mass. App. Ct. 2010).  Equitable tolling does not apply when a plaintiff

merely initiates administrative proceedings prior to filing suit.  *Campanella & Cardi Constr. Co.*

*v. Commonwealth*, 351 Mass. 184, 187 (1966); *Arriaga-Zayas v. International Ladies' Garment*

*Workers' Union-P.R. Council*, 835 F.2d 11, 14 (1st Cir. 1987).

None of the circumstances in which courts apply equitable tolling is present here.

Plaintiffs were not ignorant of their claim; rather, they began investigating their legal rights shortly

after their 2005 trip.  (Amend. Compl. ¶¶ 21-30).  Plaintiffs' 2008 lawsuit, which was filed within

the statutory period, was not dismissed for some defect in the pleading, it was dismissed for

failure to prosecute.  (WWTE Mot. to Dismiss, Ex. C).  And plaintiff's tardiness did not result

from any misconduct by the defendants.  Although plaintiffs allege certain misrepresentations by

defendants regarding their liabilities (Amend. Compl. ¶ 75), the alleged statements did not relate

to filing requirements. *Andrews*, 423 Mass. at 1021 (holding equitable tolling inappropriate where defendant had not affirmatively given plaintiff erroneous information as to the correct filing date). To the extent that plaintiffs' procedural mistakes resulted from incorrect legal advice from their own attorney (Amend. Compl. ¶ 18), such errors do not constitute misconduct by the defendant that trigger equitable tolling.

Finally, plaintiff's filing of an administrative action with the State Department in 2008 did not toll the statute. Resort to administrative processes cannot be a basis for equitable tolling. *Campanella*, 351 Mass. at 187; *Arriaga-Zayas*, 835 F.2d at 14. Even if it could, the administrative proceeding was initiated in July 2008 (Amend. Compl. ¶ 38), after the statutory period had expired.

## 2.    Statute of Limitations for Consumer Protection Claim (Count Five)

Count Five alleges that WWTE violated Mass. Gen. Laws ch. 93A by failing to disclose its identity as the vendor of the package. (Amend. Compl. ¶¶ 71-75). Claims under ch. 93A are subject to a four-year statute of limitations. Mass. Gen. Laws ch. 260, § 5A. A cause of action under ch. 93A consumer protection law arises when a plaintiff "knew or should have known of the alleged injury." *Lambert v. Fleet Nat. Bank*, 449 Mass. 119, 126 (2007).

Here, the ch. 93A claim accrued when plaintiffs knew or reasonably should have known that the identity of their vendor was unclear. The complaint suggests that plaintiffs first became suspicious about this issue when they received their credit-card statement on February 19, 2005, that listed the purchase of the travel package in "non-descriptive" terms. (Amend. Compl. ¶ 75; Ex. 7). The limitations period therefore expired four years later, on February 19, 2009. Although plaintiffs had filed both Florida court lawsuits by that time, neither suit alleged misrepresentation

or failure to disclose.  The first time plaintiffs raised such a claim was in this action, commenced on June 28, 2010, long after the four-year limitations period had expired.

### 3. Statute of Limitations for Loss of Consortium Claim (Count Seven)

Count Seven is a claim for loss of consortium.  The claim for loss of consortium is independent from the injured spouse's direct tort action, and so its viability must be evaluated separately.  *Feltch v. General Rental Co.*, 383 Mass. 603, 608 (1981).  However, in "most cases" the loss of consortium claim will accrue at the same time as the underlying action.  *Olsen v. Bell Tel. Labs., Inc.*, 388 Mass. 171, 176-77 (1983).  A cause of action for loss of consortium is subject to a three-year limitations period.  Mass. Gen. Laws ch. 260, § 2A.

Here, Mr. Gauthier's loss of consortium claim appears to arise out of psychological disorders that his wife began suffering soon after the assault in 2005.  (Amend. Compl. 18-20). His action therefore accrued shortly after the underlying tort claims.  Because more than three years elapsed between that time and the filing of this action, it is barred by the statute of limitations.

### C. Personal Jurisdiction (Counts One, Two, Three, Seven against Defendant PCL)

PCL also contends that the claims against it must be dismissed for lack of personal jurisdiction.  The Court agrees and will grant the motion to dismiss.

### 1. General Principles

 The exercise of personal jurisdiction over a defendant must be both authorized by statute and consistent with the due process requirements of the United States Constitution.  *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996); *Intech, Inc. v. Triple "C" Marine*

*Salvage, Inc.*, 444 Mass. 122, 125 (2005); *Good Hope Indus., Inc. v. Ryder Scott, Co.*, 378 Mass. 1, 5-6 (1979).

> A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction.  Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities.  General jurisdiction exists when the litigation is not directly founded on defendant's forum-based contacts, but defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citations and quotations omitted).

A district court faced with a motion to dismiss under Rule 12(b)(2) may choose among several methods for determining whether plaintiff has met its burden:  the "*prima facie*" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard.  *Id.* at 50-51, 51 n.5; *Foster-Miller, Inc., v. Babcock & Wilcox Can.*, 46 F.3d 138, 145-47 (1st Cir. 1995); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675-78 (1st Cir. 1992).  The other two methods, which require the court to engage in pre-trial fact-finding, are reserved for "closer, harder-to-call cases." *Foster-Miller*, 46 F.3d at 145.

Under the *prima facie* standard, the plaintiff bears the burden of showing that a court has personal jurisdiction over defendant.  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  In determining whether this burden has been met, a court must take specific facts affirmatively alleged by plaintiff as true (whether or not disputed) and "construe them in the light most congenial to plaintiff's claim."  *Massachusetts Sch. of Law at Andover, Inc., v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).  It then "add[s] to the mix facts put forward by defendant[], to the extent they are uncontradicted."  *Daynard*, 290 F.3d at

51.  In this jurisdictional inquiry, "consideration of materials outside the complaint is appropriate."

*Callahan v. Harvest Bd. Int'l, Inc.*, 138 F. Supp. 2d 147, 152-53 (D. Mass. 2001); *see also*

*Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

### 2.   Massachusetts Long-Arm Statute

A federal court may have either general or specific jurisdiction over an out-of-state

defendant.  General jurisdiction "exists when the litigation is not directly founded on defendant's

forum-based contacts, but defendant has nevertheless engaged in continuous and systematic

activity, unrelated to the suit, in the forum state."  *Massachusetts Sch. of Law*, 142 F.3d at 34.

By contrast, specific jurisdiction requires only a "demonstrable nexus between a plaintiff's claims

and a defendant's forum-based activities."  *Id.*

Here, the Court lacks general jurisdiction over PCL.  Plaintiffs do not allege that PCL

engages in business activities in Massachusetts that can be considered "continuous and

systematic."  They only contend that PCL has done some unspecified amount of business in the

state at some point in the past.  (Opp. to Mot. to Strike at 4).  The affidavit of Peter Jiacik,

submitted by PCL and uncontested on these points, establishes that the company has no office in

Massachusetts and has not had a project within the state for approximately ten years.  (Jiacik Aff.

¶ 8-10).  This connection is insufficient to support the assertion of general jurisdiction.

Nor have plaintiffs stated facts sufficient to support the assertion of specific jurisdiction

under the long-arm statute.  Mass. Gen. Laws ch. 223A, § 3(d) permits the assertion of personal

jurisdiction over nonresident defendants who solicit business in Massachusetts in cases arising

from tortious out-of-state conduct, but only if the out-of-state conduct causes "tortious injury in

this commonwealth."  Plaintiffs allege that they meet this requirement because they have suffered

and continue to suffer psychological and economic harms in Massachusetts that derive from the assault in the Bahamas.

Such trauma- and consortium-related harms are not, however, "injur[ies] in this commonwealth" within the meaning of ch. 223A,§ 3(d).  In a similar case, the First Circuit has held that ch. 223A § 3(d) did not establish personal jurisdiction over an out-of-state hotel group in an action arising from a sexual assault of plaintiff in a Barbados hotel, even though the victim convalesced and suffered "most of the effects" of the injury once back in Massachusetts.  *Crocker v. Hilton Intern. Barbados, Ltd.*,  976 F.2d 797, 800 (1st Cir. 1992).  The court explained that "the injury to which Section 3(d) refers is the sexual assault itself, not the manifestations or effects of that injury."  *Id.  See also Walsh v. National Seating Co.*, 411 F. Supp. 564, 571 (D. Mass. 1976) (declining to exercise jurisdiction over an action arising from an out-of-state bus accident, stating that "[w]hile it is undoubtedly true that plaintiff and his wife suffered in Massachusetts this does not mean they were injured here").

Because the Court finds that it lacks statutory jurisdiction under Massachusetts's long-arm statute, analysis of the constitutionality of asserting jurisdiction over PCL is not necessary.

### D.      Subject-Matter Jurisdiction over FTCA Claim against the United States (Counts Two, Six, Seven)

Plaintiffs have sued the United States under the FTCA, alleging negligence, obstruction of justice, and civil rights violations on the part of the United States Embassy in Nassau in its handling of their case after the assault.  The FTCA acts as a partial waiver of sovereign immunity, rendering the United States liable for certain tort and contract claims.  28 U.S.C. 2671 *et seq.*  It grants jurisdiction to the district courts to hear claims arising from acts of the United States or its

employees acting within the scope of their employment, to the extent that "the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b)(1). The FTCA's grant of jurisdiction to the district courts to hear FTCA claims against the United States is coextensive with the act's waiver of sovereign immunity. Thus, actions that do not fall under the express terms of the FTCA's waiver must be dismissed for lack of subject-matter jurisdiction. *Id.*; *Wood v. U.S.*, 290 F.3d 29, 35 (1st Cir. 2002).

The United States argues that consular assistance rendered by a United States embassy abroad is beyond the scope of the FTCA's waiver of sovereign immunity and that therefore subject-matter jurisdiction does not exist as to those claims. The Court agrees for two independent reasons. Each is discussed in turn.

### 1.      Claims Arising in a Foreign Country

The FTCA creates an exception to the liability of the United States for "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). Actions occurring at United States embassies and consulates abroad fall within this exception. *Gerritson v. Vance*, 488 F. Supp. 267, 268 (D. Mass. 1980). Here, the alleged negligence and intentional misconduct of the United States embassy in Nassau clearly falls within this general rule.

Plaintiffs nonetheless contend that their claims did not arise "in a foreign country," emphasizing that many of their interactions with the embassy occurred by telephone after plaintiffs returned to Massachusetts. Courts that have addressed the issue have held that, if the alleged tortious conduct took place abroad, actions are claims "arising in a foreign country" even if the plaintiff's injuries were suffered within the United States. *Leaf v. United States*, 588 F.2d 733, 736 (9th Cir. 1978); *Manemann v. United States*, 381 F.2d 704, 705 (10th Cir. 1967). *Cf.*

*Richards v. United States*, 369 U.S. 1, 9-10 (1962) (holding that the FTCA "requires federal courts, in multistate tort actions, to look in the first instance to the law of the place where the acts of negligence took place").  Here, even if the embassy's correspondence with plaintiffs after they returned to Massachusetts caused additional harms beyond those suffered in the Bahamas, the negligent conduct at issue nonetheless occurred in the Bahamas.  Thus, because plaintiffs' FTCA claims are claims "arising in a foreign country," they are beyond the FTCA's waiver of sovereign immunity and outside this Court's subject-matter jurisdiction.

2.   <strong><u>Private Party Analogy</u></strong>

The FTCA also subjects the United States to liability only "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674; *see also* 28 U.S.C. § 1346(b).  A claimant against the government therefore must identify some basis on which a private party would be liable for acts analogous to those the government is alleged to have taken.  *McCloskey v. Mueller*, 446 F.3d 262, 267 (1st Cir. 2006).  As a result, FTCA liability cannot result from "obligations that are peculiar to governments or official-capacity state actors and which have no private counterpart in state law."  *Id.*

Here, the obligations of the embassy staff to provide American citizens with consular assistance corresponds to no analogous private obligation.  Private citizens owe no duty to others to help with the investigation and reporting of crimes.  Thus, plaintiffs' claim that the staff was negligent and violated their civil rights by failing to report the sexual assault in a timely way cannot be a basis for FTCA liability.

## III.   <u>Motion to Strike</u>

PCL asks the Court to strike two documents submitted by plaintiffs.  First, it contends that

18

plaintiffs' surreply brief and its supporting exhibits were submitted without leave of court and containing "redundant, immaterial, impertinent or scandalous matter" within the meaning of Rule 12(f).  Second, it contends that the affidavit of Eileen Gauthier, which was submitted on February 18, 2011, and which includes the names particular PCL employees and their telephone extensions, is impertinent, immaterial, and scandalous, and that it is inadmissible hearsay.   For the reasons given below, the court will deny the motion to strike plaintiffs' surreply brief and will grant the motion to strike the names of the PCL employees in the February 18 affidavit.[4]

### A.     Plaintiffs' Surreply Brief

Following PCL's submission of a reply brief on its motion to dismiss, plaintiffs submitted what they call "Plaintiffs Response in Opposition to Defendant PCL Construction Services, Inc. Reply Memorandum in Support of Defendants Motion to Dismiss Plaintiffs Amended Complaint." It is essentially a surreply brief, and the Court will treat it as such.

As PCL correctly points out, plaintiffs have not followed the proper procedure for submitting a surreply brief.  Local Rule 7.1(b)(3) states that all filings other than motions, memoranda in support, and oppositions to motions "may be submitted only with leave of court." Plaintiffs did not seek leave to file additional briefings on PCL's motion to dismiss, so the submission clearly violates the rule.  Ostensibly, this error provides a basis for the Court to strike the briefs in their entirety.

However, the Court is not strictly bound to enforce that rule.  A district court has "great

---

[4] The Court notes that its ruling on this motion to strike does not affect its decision to dismiss the action. Thus, its decision to strike portions of the record affects only documents that will remain in the case record. Because PCL expresses a concern for the privacy interests of those individuals named in the affidavit, and because those interests apply equally in relation to the contents of the record after dismissal, the motion to strike is not moot.

leeway in the application and enforcement of its local rules." *United States v. Roberts*, 978 F.2d 17, 20 (1st Cir. 1992). This discretion includes the authority "to interpret its own local rules in nontechnical ways." *City of Waltham v. United States Postal Service*, 11 F.3d 235, 243 (1st Cir. 1993). Here, plaintiffs, as *pro se* litigants, seem to have taken PCL's reply memorandum to be a separate motion and to have interpreted Local Rule 7.1(b)(2) to create a right to respond in opposition to it. Plaintiffs attempted to correct their mistake by submitting a late motion for leave to file the surreply. Given the harmless nature of this technical violation of Local Rule 7.1, the Court declines to strike the brief and its exhibits.

Nor will the Court strike the brief pursuant to Fed. R. Civ. P. 12(f). Rule 12(f) allows a court, on its own or on motion filed by any party, to strike "from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Although the rule refers only to pleadings, courts may use the rule to strike portions of affidavits and other submissions. *Pigford v. Veneman*, 225 F.R.D. 54, 58 n.8 (D.D.C. 2005). However, Rule 12(f) motions are disfavored, especially where prejudice against the nonmoving party will result. 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE 3d. § 1382 (3d Ed. 2011). Plaintiffs' surreply is not irrelevant. Nor is it so redundant or scandalous as to require the Court to strike it under Rule 12(f).

For these reasons, the Court declines to strike plaintiffs' surreply brief. Because the Court declines to strike the improperly filed brief, plaintiffs' motion for leave to file it properly is unnecessary and will be dismissed as moot.

**B.    Second Affidavit of Eileen Gauthier**

PCL's motion to strike portions of the second affidavit of Mrs. Gauthier will be granted under Rule 12(f). The affidavit lists 24 individuals employed by PCL on a construction job in

Ontario, Canada.  (Gauthier Aff. 2/18/2011 ¶ 8).  It also alleges that one of those workers was involved with the assault in the Bahamas that gave rise to this action.  (*Id.* ¶ 7).

PCL correctly asserts that the affidavit's inclusion of these names in the record of an action arising from alleged rape unduly impugns the character of the individuals.  Material is "scandalous" under Rule 12(f) if it "improperly casts a derogatory light on someone." *In re Gitto Global Corp.*, 2005 WL 1027348, at *9 n.9 (D. Mass. 2005) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE 3d. § 1382 (3d Ed. 2011)).  Although offensive material may not be purged from the record where it is relevant to the action, *id.*, that is not the case here.  The affidavit was submitted following PCL's motion to dismiss, when the only relevant issues concerned the statute of limitations and the Court's jurisdiction over PCL.  The possible identity of the assailants is not relevant to either.  Where, as here, irrelevant allegations threaten to cast a private individual in a derogatory light, "the disfavored character of Rule 12(f) is relaxed somewhat," and Rule 12(f) is used to "purge the court's files and protect the person who is the subject of the allegations." *Id.*

The affidavit's unsupported association of these individuals with sexual misconduct in paragraph 8 warrants striking that paragraph from the record.  Because the motion will be granted on Rule 12(f) grounds, there is no need to address PCL's hearsay argument.

## IV.   Motion for Sanctions

Finally, PCL seeks to recover attorney's fees from plaintiffs under Fed. R. Civ. P. 11(c).  PCL emphasizes that the present action is the second time plaintiffs have brought suit against the company, that the factual and legal basis for plaintiffs' case is weak, and that the first lawsuit provided plaintiffs ample notice that they had no legitimate claim.  The motion will be denied.

A court may impose Rule 11 sanctions or shift attorney's fees if a party files a pleading to promote an improper purpose or to assert a frivolous or malicious claim. Fed. R. Civ. P. 11(b)(1)-(2). The use of sanctions "serves two main purposes: deterrence and compensation." *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426 (1st Cir. 1992). Rule 11 is a "potent weapon," *id.*, and so "a judge should resort to [sanctions] only when reasonably necessary—and then with due circumspection." *United States v. Figueroa-Arenas*, 292 F.3d 276, 279 (1st Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). In deciding whether a party violated Rule 11(b), a court "must use an objective standard of reasonableness under the circumstances." *Hochen v. Bobst Group, Inc.*, 198 F.R.D. 11, 16 (D. Mass. 2000) (citing *Cruz v. Savage*, 896 F.2d 626, 630-631 (1st Cir. 1990). *Pro se* litigants may be sanctioned for violating Rule 11's requirement that their filings be reasonable, but, as in other contexts, *pro se* filings are held to "less stringent standards than formal pleadings drafted by lawyers." *Mills v. Brown*, 372 F. Supp. 2d 683, 692 (D.R.I. 2005) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)).

The Court disagrees with PCL's assertion that plaintiffs' prior lawsuits render their present action unreasonable under the circumstances. Plaintiffs' 2008 lawsuit in Florida was brought against entirely different parties, and in any case was dismissed for failure to prosecute without any ruling on the merits. The 2009 lawsuit in Florida was dismissed on grounds of *forum non conveniens*. Dismissal on these procedural grounds would have given plaintiffs no particular basis for evaluating the strength of their substantive case. Thus, their decision to bring suit against the company here is not obviously frivolous or malicious.

PCL also contends that sanctions are warranted because it gave plaintiffs advance notice that it did not employ the construction workers alleged to have committed the sexual assault.

22

Litigants have no obligation to believe the assertions of an opposing party that amount to a denial of liability.  No sanctions are warranted by plaintiffs' refusal to do so.

In sum, plaintiffs' decision to sue in a Massachusetts federal court was clearly not frivolous or malicious, and sanctions are inappropriate.

**V.     Conclusion**

For the foregoing reasons,

1.     the motion by defendant PCL Construction Services, Inc., to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted is GRANTED;

2.     the motion by defendant Intercontinental Hotels Corp. to dismiss for failure to state a claim upon which relief can be granted is GRANTED;

3.     the motion by defendant World Wide Travel Exchange to dismiss for failure to state a claim upon which relief can be granted is GRANTED;

4.     the motion by defendant United States of America to dismiss for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction is GRANTED;

5.     the motion by defendant PCL Construction Services, Ltd. to strike is GRANTED in part and DENIED in part;

6.     the motion by defendant PCL Construction Services, Ltd. for sanctions is DENIED; and

7.     the motion by plaintiffs for leave to file is DENIED as moot.

**So Ordered.**

23

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  September 2, 2011